# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| LONNIE ARSBERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17 C 50044 |
| ) | |
| WEXFORD HEALTH SOURCES, INC., ) | |
| WARDEN DONALD ENLOE, AMBER ) | |
| ALLEN, BESSIE DOMINGUEZ, ) | |
| DR. SHAFFER, DR. BAUTISTA, ) | |
| and DR. DAVILA, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Lonnie Arsberry, an inmate at Dixon Correctional Center, has filed suit under 42 U.S.C. § 1983 against Wexford Health Sources, Inc., several of its personnel, and personnel of the Illinois Department of Corrections (IDOC), alleging deficiencies in his medical care. Wexford has moved to dismiss Arsberry's third amended complaint for failure to state a claim.

The Court begins by noting a matter that it allowed to slip through the cracks. In his original *pro se* complaint, placed for mailing at the prison in or around late January 2017, Arsberry sued Wexford, four medical doctors (identified as Dr. Schaffer, Dr. Dominguez, Dr. Bautista, and Dr. Davila), and Amber Allen, a health care administrator. About two and one-half months after the complaint was received by the Clerk, the district judge to whom this case was previously assigned granted leave to proceed *in forma pauperis*, appointed counsel to represent Arsberry, and deferred issuance of

summons pending counsel's filing of an amended complaint. Counsel's amended complaint, filed in late November 2017, named only Wexford, not any individual defendants. The assigned magistrate judge directed service of summons on Wexford only. Counsel filed a second amended complaint about seventeen months later, in April 2019, again naming only Wexford.

Then, in late June 2019, counsel filed a third amended complaint, naming not just Wexford but also re-naming the four physicians and administrator Allen, as well as the warden of Dixon Correctional Center. The third amended complaint split up the claims against the individual defendants into separate counts, unlike the original, *pro se* version of Arsberry's complaint. The Court has, up to this point, neglected to conduct the required initial review under 28 U.S.C. § 1915A of the new (or renewed) claims against the individual defendants. The Court will conduct that review in this decision, after dealing with Wexford's motion to dismiss. Lastly, the Court will address motions to dismiss recently filed by the individual defendants.

**Facts**

The Court takes the facts from Arsberry's third amended complaint. Arsberry is 73 years old and until recently was housed in Dixon's geriatric unit, which requires an inmate to be at least 50 years old and have two or more chronic illnesses. Arsberry alleges that he has a myriad of serious and chronic medical conditions, including significant problems in his thoracic and lumbar spine; a severe chronic skin condition; pain in his right heel, left leg, and left neck; cardiac problems, including atherosclerotic calcification of the aortic arch; hepatitis C with scarring of the liver; gastric ulcers; a hiatal hernia and an inguinal hernia; nodules throughout his lungs, indicative of early

2

stage interstitial lung disease and sarcoidosis; and prostate cancer, albeit in remission.

In count 1, his claim against Wexford, Arsberry alleges that from 2012 through the present, appropriate treatment for these conditions—in particular, treatment by specialists outside the prison as well as diagnostic testing that would be conducted outside the prison—has been improperly delayed. First, Arsberry alleges that from 2012 through the date a physician named Chamberlain was appointed at Dixon's medical director—which Arsberry places in late 2015 or early 2016—he was not referred for specialized treatment at all. He alleges this was due to what he alleges was Wexford's policy of refusing to use its "collegial review" process, which is the process Wexford has established to determine when to approve a prisoner for outside treatment. 3rd Am. Compl. ¶¶ 23, 24, 29. Second, Arsberry identifies certain specific incidents in 2018: one in which an MRI of his spine to determine degenerative progression was delayed by three months (from July to October 2018), *see id.* ¶ 25; another in which an epidural injection related to his spinal condition was not provided after approval by collegial review, *see id.* ¶ 26; and a third in which approval was never given for a biopsy concerning his skin problems, *see id.* ¶ 27.

Counts 2 through 10 of the third amended complaint (not including count 7, which is missing) are asserted against the medical doctors.

- In count 2, asserted against Dr. Dominguez, Arsberry alleges that on various dates from 2012 through January 2015, Dr. Dominguez refused to treat his back problems and refused to refer him to a specialist, saying there was nothing he could do for Arsberry's severe back pain.
- In count 3, against Dr. Schaffer, Arsberry complains that in July 2012, Dr.

3

- Schaffer failed to treat him or refer him for outside treatment for his severe back pain.
- In count 4, against Dr. Davila, Arsberry alleges that in June 2015, Dr. Davila failed to provide appropriate treatment, or refer him for treatment by a specialist, for his severe back pain as well as for severe abdominal pain accompanied by bloody diarrhea, anemia, weight loss, and dehydration.
- In count 5, against Dr. Bautista, Arsberry alleges that in May 2015, Dr. Bautista failed to treat him or refer him for outside treatment for his severe back pain.
- In count 6, against Dr. Dominguez, Arsberry alleges that from August 2012 through January 2015, Dr. Dominguez failed to provide appropriate treatment or refer Arsberry for outside treatment for his chronic, painful skin condition.
- In count 8 (there is no count 7), against Dr. Davila, Arsberry alleges in June 2015, that Dr. Davila (like Dr. Dominguez before him) failed to provide appropriate treatment or refer him for outside treatment for his chronic, painful skin condition.
- In count 9, Arsberry makes similar allegations regarding his skin condition against Dr. Bautista, dating to May 2015.
- In count 10, Arsberry makes similar allegations regarding his skin condition against Dr. Schaffer, dating to July 2012.

The remaining claims are asserted against non-Wexford defendants. Count 11 is a claim against Donald Enloe, the warden of Dixon correctional center. Arsberry alleges that Enloe was responsible for reviewing prisoner grievances and that in denying Arsberry's grievances, he was deliberately indifferent to the inadequate medical care

being provided to Arsberry. Arsberry alleges that Enloe had authority to recommend or direct appropriate medical care but deliberately failed to do so.

Count 12 is a similar claim against Amber Allen, identified as a "hospital administrator" who reviews and investigates grievances. Arsberry alleges that through her review of grievances, Allen was aware of the inadequate medical care being provided to him, was in a position to do something about it by making recommendations and giving instructions regarding inmate medical care, but did nothing.

**1.    Wexford's motion to dismiss**

The Court begins with Arsberry's claim against Wexford for violation of his Eighth Amendment rights. The Eighth Amendment's prohibition against cruel and unusual punishment protects a prisoner from deprivation of medical care that "may result in pain and suffering that serves no penological purpose." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015). To sustain a claim, the prisoner must show—or, in the present procedural context, plausibly allege—that he suffered from a sufficiently serious medical need (an objective standard) and that officials were deliberately indifferent to that need (a subjective standard). *See, e.g., Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). Wexford, however, is not liable for its employees' actions or inaction under a theory of *respondeat superior*. Rather, to establish Wexford's liability, Arsberry must plausibly allege, and ultimately show, that it was a "policy or custom" of Wexford that "inflict[ed] the injury," *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978), in other words that a policy or custom of Wexford was "the moving force behind a constitutional injury." *McCann v. Ogle County*, 909 F.3d 881, 888 (7th Cir. 2018) (internal quotation marks and brackets omitted). *See Shields v. Ill. Dep't of Corrs.*, 748

5

F3d 782, 789-90 (7th Cir. 2014) (*Monell* requirements apply to claims against private corporations that contract to provide essential governmental services).

In seeking dismissal, Wexford contends that Arsberry's allegations regarding a policy or custom of Wexford are conclusory and lack plausibility; that he has not alleged an underlying constitutional wrong; and that "the vast majority of [his] medical care and treatment at issue in this case was time-barred from the day this case was filed." Def.'s Mot. to Dismiss (dkt. no. 61) at 5.

The Court overrules the first of these arguments. Arsberry has alleged that in several instances, Wexford's own treatment of him was inadequate and that it either refused to submit the question of outside treatment for collegial review or failed to follow the recommendations of collegial review. This, Arsberry alleges, is a regular practice of Wexford that is motivated by cost-cutting rather than by medical considerations. Wexford strenuously denies the truth of these allegations, but they are sufficient to plausibly allege a policy or custom that caused the denial of treatment or its undue delay.

Second, Arsberry has sufficiently alleged denial or inappropriately long delays in treatment, at least for several of the serious conditions he cites. First of all, Arsberry's allegations are sufficient to meet the serious medical condition element of an Eighty Amendment claim; Wexford does not argue otherwise. "A medical condition is considered objectively serious when it has been diagnosed by a physician as requiring treatment or would be obvious to a layperson." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Arsberry is seventy-three years old and alleges that he has been diagnosed with a myriad of health issues ranging from lung and heart issues to a painful chronic

6

skin condition and chronic back pain. These conditions qualify as serious.

Arsberry has also sufficiently alleged deliberate indifference. "[P]rison officials must provide inmates with medical care that is adequate in light of the severity of the condition and professional norms." *Perez*, 792 F.3d at 777. The fact that a prisoner received some medical care does not, by itself, defeat a claim of deliberate indifference. *Id*. Among other things, liability may exist if officials "delay[ ] a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). Arsberry's third amended complaint sufficiently alleges unjustified delays and denial of treatment for his serious conditions without medical justification and in an effort to cut costs. This is sufficient to pass muster on a motion to dismiss for failure to state a claim.

This brings the Court to Wexford's statute of limitations argument. A two-year limitations period governs Arsberry's section 1983 claim against Wexford. Wexford points out that Arsberry cites misdeeds dating back to 2012 but did not file suit until 2017. It is true that *some* of what Arsberry alleges took place in 2012, but much and perhaps most of it dates to 2015 and later. As previously noted, Arsberry filed this suit in January 2017, and the limitations period was tolled for at least some time due to the fact that Arsberry was exhausting the prison grievance process, a prerequisite to suit under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). *See Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001).

The real question, though, is when Arsberry's claim against Wexford accrued. Wexford appears to view count 1 as a series of discrete claims, each stemming from a particular failure to treat or delay in treatment. Perhaps that is how the Court ultimately

7

will assess the claim, but for now Arsberry has asserted a single claim against Wexford encompassing all of the delays in and denials of treatment. The Court cannot say at this point in the suit that this is a legally inappropriate way of viewing it—it is possible, for example, that Arsberry is essentially complaining of an undifferentiated mass of pain caused by the accumulation of delays or denials of treatment. And Wexford does not attempt to address the accrual question at all. The Court concludes that dismissal based on the statute of limitations is inappropriate on a Rule 12(b)(6) motion.

The Court also notes that in its reply brief, Wexford contends that Illinois' four-year statute of repose bars most of Arsberry's claims. This argument was forfeited as a basis for dismissal because Wexford did not assert it in its opening brief, but even if not forfeited it lacks merit. Illinois' personal injury statute of limitations governs claims under 42 U.S.C. § 1983 brought in this state, *see Wilson v. Garcia*, 471 U.S. 261, 276 (1985), not a specialized statute of repose applying only to medical negligence claims. Wexford cites no authority supporting its contrary contention.

In sum, the Court denies Wexford's motion to dismiss and directs Wexford to answer Arsberry's third amended complaint within 28 days of this order.

**2.      Section 1915A review of claims against individual defendants**

The Court has reviewed Arsberry's claims the medical defendants in counts 2 through 10 (again, there is no count 7) under 28 U.S.C. § 1915A, which is the equivalent of review for failure to state a claim. Each of these claims plausibly alleges the elements of liability under the Eighth Amendment. The real question is whether some or all of them are time-barred. This is a different question from the one the Court addressed regarding Arsberry's claims against Wexford, because each of his claims

against an individual defendant is based on a separate medical problem and a separate failure to provide or delay in providing treatment.

The Court notes that the claims against each of the medical defendants—Dr. Dominguez (counts 2 and 6), Dr. Schaffer (counts 3 and 10), Dr. Davila (counts 4 and 9, and Dr. Bautista (counts 5 and 9)—all were asserted in Arsberry's original, *pro se* complaint. Thus although they were omitted from one or more versions of the amended complaint, each of these claims would appear to relate back, for limitations purposes, to the filing of the original complaint in January 2017. *See* Fed. R. Civ. P. 15(c)(1)(B). With that in mind, at this point the Court can find only two of the claims time-barred, specifically count 3 and 10 against Dr. Schaffer. These counts specifically allege treatment or failure to treat in 2012, and only in 2012. Even if one takes into account the time spent exhausting the grievance process on each, these two claims were time-barred long before Arsberry filed this suit in January 2017. The Court therefore dismisses counts 3 and 10 of the third amended complaint on initial review under section 1915A for failure to state a claim. The Court notes that although two other claims—counts 2 and 6 against Dr. Dominguez—also allege treatment dating back to 2012, these claims allege an ongoing course of inadequate treatment or failure to treat that extended into 2015. The Court cannot determine on what amounts to Rule 12(b)(6) review that these claims accrued more than two untolled years before Arsberry filed this lawsuit.

Each of the remaining individual claims against the medical defendants arises from conduct or inaction that is alleged to have taken place in 2015. These claims, which like the others relate back to the date Arsberry filed this suit in January 2017, are

9

all timely even if one does not take into account tolling based on administrative exhaustion.

This leaves Arsberry's claims against warden Enloe and hospital administrator Allen. These claims are sufficient to pass muster on initial review under section 1915A. Each claim arises from the defendant's review of Arsberry's frequent medical grievances and failure to require further treatment. A grievance officer or supervisor may be held personally liable if she had actual knowledge of a constitutional deprivation yet failed to intervene to address the violation. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (reversing dismissal of claims against grievance officers); *see also Childress v. Walker*, 787 F.3d 433, 439-40 (7th Cir. 2015). Both claims sufficiently allege the defendant's ability to take or recommend action to remedy the allegedly inadequate medical and deliberate failure to do so.

3. **Motions to dismiss filed by individual defendants**

The individual defendants have now been served and have moved to dismiss Arsberry's third amended complaint. The Court denies each of these motions to the extent they apply to claims the Court has not already dismissed.

a. **Medical defendants**

The primary basis for dismissal by the medical defendants is the statute of limitations. The motion does not take into account the relation-back rule, which plainly applies because each of the claims against these defendants in the third amended complaint was asserted in Arsberry's original *pro* se complaint filed in January 2017. In addition, the medical defendants' motion seeks dismissal based on the Illinois medical malpractice statute of repose, which as the Court has noted does not apply to Arsberry's

10

section 1983 claims (the defendants cite no controlling or otherwise persuasive authority indicating it does). All of the claims against the medical defendants except for counts 3 and 10, which the Court has already dismissed, arise from conduct or inaction that is alleged to have taken place within two years of Arsberry's filing of his initial claims against the medical defendants.

The medical defendants also contend that Arsberry's claims lack plausibility or do not allege sufficient facts. The Court disagrees. Arsberry alleges that he presented to them with serious medical conditions and that they ignored his complaints or provided treatment that even a layperson would recognize as insufficient. In arguing otherwise, defendants essentially ask the Court to ignore the requirement to take Arsberry's allegations as true and draw reasonable inferences in his favor.

### b. IDOC defendants

The Court also denies the motion to dismiss filed by the IDOC defendants, Enloe and Allen. In this regard, the Court adopts its earlier explanation for why these claims survive initial review under section 1915A, under which the Court employed the same standard that governs Rule 12(b)(6) motions.

### Conclusion

For the reasons stated above, the Court dismisses counts 3 and 10 of plaintiff's third amended complaint with prejudice on initial review under 28 U.S.C. § 1915A. The Court denies the defendants' motions to dismiss [dkt. nos. 61, 84, 85] and directs defendants to answer all remaining claims by no later than January 31, 2020.

Date: January 2, 2020

_____
MATTHEW F. KENNELLY
United States District Judge