**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| Lonnie Arsberry, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 3:17-cv-50044 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| Wexford Health Sources, Inc., *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Plaintiff's motion to compel discovery responses [144] is granted in part and denied in part.

### I. Background

Plaintiff Lonnie Arsberry brings claims under 42 U.S.C. § 1983 against Defendants Wexford Health Sources, Inc., a medical contractor for the Illinois Department of Corrections ("IDOC"), and Warden Donald Enloe, Amber Allen, Dr. Bessie Dominguez, Dr. Catalino Bautista, and Dr. Arthur Davida, alleging that they were deliberately indifferent to his serious medical needs and caused intentional infliction of emotional distress while he was an inmate at Dixon Correctional Center ("Dixon") from 2012 to 2018. Specifically, Plaintiff, who is 76 years old and suffers from numerous medical conditions, alleges that the individual medical Defendants were deliberately indifferent to his back, abdominal, and chronic skin conditions between 2012 and 2015 when they refused to treat those conditions or recommend him to outside specialists. Pl.'s Compl., Dkt. 121. Plaintiff essentially alleges the IDOC Defendants, Enloe and Allen, were deliberately indifferent because they failed to intervene in Plaintiff's medical care to ensure he was provided with timely and adequate medical treatment.

As to Defendant Wexford, Plaintiff alleges that from 2012 to the present[1] Wexford's unconstitutional policies, standards, and practices subjected Plaintiff to ongoing and continuous acts of deliberate indifference by initially failing to refer him for offsite specialty treatment and later providing delayed or inadequate offsite specialty treatment and related follow-up care. Pl.'s Compl. at 6-8, Dkt. 121. In support of this claim against Wexford, Plaintiff cites to the findings in *Lippert, et al. v. Ghosh, et al.*, No. 1:10-CV-04603 (N.D. Ill.). In *Lippert*, a class-action lawsuit,

---

[1] In his Fourth Amended Complaint, Plaintiff alleges that Wexford's policies and practices "from 2012 to present" have subjected him to deliberate indifference. Pl.'s Compl. at 6, Dkt. 121. However, according to the IDOC's website, Plaintiff was released on parole on October 2, 2020 and as of that date would not have been subjected to Wexford's policies or practices. *See* IDOC, *Individuals in Custody Search*, https://www2.illinois.gov/idoc/Offender/pages/inmatesearch.aspx (last visited Oct. 7, 2021).

the court appointed two separate experts to assess the allegedly inadequate medical care that was being provided to IDOC inmates and to issue reports with their findings and recommendations. The first report was issued in 2014, and a follow-up report was issued in 2018. Both the 2014 and 2018 reports included facility-specific findings relating to Dixon and identified numerous systemic failures in the prison healthcare system, including delays for offsite services, referrals for specialty care, and related follow-up visits with inmates. *See* Ex. G-H, Dkts. 144-7, 144-8.

With respect to scheduled offsite specialty services, the *Lippert* reports identified deficiencies relating to Wexford's use of the collegial review process. According to the reports, the collegial review process begins when a clinician determines that there is a need for an offsite service. This recommendation is reviewed by the site Medical Director, who either concurs and presents the request to the weekly collegial review discussion or suggests an alternative plan of care. During collegial review, an offsite Wexford physician either approves the service or suggests an alternate plan. If the reviewing physician approves the service, an authorization number is provided to the University of Illinois at Chicago hospital ("UIC"). The correctional facility then works with UIC to schedule the offsite service. The *Lippert* reports found "breakdowns in almost every area, starting with delays in identification of the need for the offsite services, delays in obtaining an authorization number, delays in being able to schedule an appointment timely, delays in obtaining offsite paperwork and delays or the absence of any follow-up visit with the patient." Dec. 2014 *Lippert* Report (Ex. G) at 10, Dkt. 144-7.

In February 2021, Plaintiff served interrogatories and documents requests on Wexford and the IDOC Defendants.[2] Many of these requests seek documents concerning or underlying the *Lippert* reports. Wexford and the IDOC raised numerous objections to the requests, and the parties were unable to resolve their disputes. Accordingly, on July 19, 2021, Plaintiff filed the instant motion seeking to compel Wexford and the IDOC to produce documents and for Wexford to answer certain interrogatories. Dkt. 144. The parties submitted briefing on the motion, *see* Dkts. 150-52, and this Court also heard oral arguments on September 9, 2021. Following the motion hearing, the Court ordered the parties to participate in an additional meet and confer to attempt to resolve their disputes.[3] On September 24, 2021, the parties filed a joint status report informing the Court that they were unable to resolve most of the outstanding discovery disputes. Dkt. 155. The Court will address the discovery requests that remain in dispute.

## II. Standard of Review

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional

---

[2] Plaintiff also served a subpoena for the production of documents on the IDOC. Counsel for the IDOC agreed to respond to Plaintiff's request for documents within the requests issued to the IDOC Defendants in this case. Accordingly, the Court will refer to the IDOC and Defendants Enloe and Allen as "the IDOC."
[3] In its response, the IDOC requests that Plaintiff's motion be denied because counsel did not properly conduct a meet and confer pursuant to Local Rule 37.2 where he only engaged in an email exchange prior to filing the motion. *See* Def.'s Resp at 4-5, Dkt. 151. However, this Court finds it unnecessary to deny Plaintiff's motion outright where the parties met and conferred following the motion hearing. *See Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) (recognizing that it is within the district court's discretion to either insist on strict compliance of the local rules or to overlook transgressions).

to the needs of the case." Fed. R. Civ. P. 26(b)(1). "A party seeking such discovery should point to something that demonstrates that the requested documents are both relevant and proportional to the needs of the case, as Rule 26 dictates." *Allstate Ins. Co. v. Electrolux Home Prod., Inc.*, No. 16-CV-4161, 2017 WL 5478297, at *4 (N.D. Ill. Nov. 15, 2017); *see also Autotech Techs. Ltd. Partnership v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 440 (N.D. Ill. 2006) ("The initial inquiry in enforcement of any discovery request is one of relevance."). "If discovery appears relevant, the burden is on the party objecting to a discovery request to establish the request is improper." *Doe v. Loyola Univ. Chicago*, No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020).

Under Rule 26, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26, advisory committee notes to 2015 amendment. Yet, proportionality "is not self-defining; it requires a common sense and experiential assessment." *Generation Brands, LLC v. Decor Selections, LLC*, 19 C 6185, 2021 WL 780485, at *2 (N.D. Ill. Mar. 1, 2021). "[T]he key . . . is careful and realistic assessment of actual need" that may "require the active involvement of . . . the federal judge to guide decisions respecting the scope of discovery." *United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 259 (3rd Cir. 2016). However, courts are not required to re-write discovery requests, and frequently decline to do so. *See Elwyn Robinson v. PPG Industries, Inc. et al.*, CV1904033ODWRAOX, 2021 WL 4497222, at *6 (C.D. Cal. July 23, 2021); *Settlemyer v. Borg-Warner Morse TEC, LLC*, 1:19 CV 344 MR WCM, 2021 WL 66411, at *3 (W.D.N.C. Jan. 7, 2021); *Ye v. Cliff Veissman, Inc.*, 14-CV-01531, 2016 WL 950948, at *4 (N.D. Ill. Mar. 7, 2016); *Annex Books, Inc. v. City of Indianapolis*, 103CV00918SEBTAB, 2011 WL 13305341, at *3 (S.D. Ind. Feb. 18, 2011).

### III. Discussion

### A. *Lippert* Materials

Plaintiff seeks to compel Wexford and the IDOC to produce documents relating to any investigation, audit, monitoring, or review of the medical care and treatment of inmates at Dixon, including documents relating to and underlying the 2014 and 2018 *Lippert* reports.

At the outset, this Court notes that both Wexford and the IDOC make an overarching proportionality argument in response to Plaintiff's request for documents underlying the *Lippert* reports. Throughout their briefs, both parties generally argue that this request is not proportional to the needs of this case considering the broad scope of Plaintiff's request and the undue burden imposed in searching for and producing such discovery. This Court will discuss below the scope of the requests and the burden that Wexford and the IDOC allege their response will impose.

However, one of the parties' arguments lodged under the guise of proportionality deserves mention at the outset. Wexford generally alleges that the strength of Plaintiff's case does not warrant the scope of discovery requested. Specifically, Wexford argues that Plaintiff cannot prove an unconstitutional policy of delay in approving offsite treatment considering the "insurmountable amount of timely, adequate and responsive medical treatment" he received both on-site at Dixon and off-site at UIC and elsewhere "for his myriad of medical issues." Def.'s Resp. at 5, Dkt. 150.

3

But that is Wexford's view of this case and it is starkly different than the facts as alleged in Plaintiff's complaint. As the district judge stated when denying Wexford's motion to dismiss Plaintiff's *Monell* claim, "[t]he fact that a prisoner received some medical care does not, by itself, defeat a claim of deliberate indifference." Dkt. 89 at 7.[4] Moreover, Wexford's challenge to the sufficiency of Plaintiff's *Monell* claim is without merit where the district judge already determined that Plaintiff sufficiently alleged a policy or custom that caused the denial of treatment or its undue delay. *Id.* at 6. It is not for this Court to reexamine the sufficiency of Plaintiff's claim on a motion to compel. Instead, this Court must determine if the requested discovery is reasonably tailored to the claim as alleged in the complaint. *See Prince v. Kato*, No. 18 C 2952, 2020 WL 1874099, at *2 (N.D. Ill. Apr. 15, 2020) (declining to "make findings about whether certain facts have been established or not established to justify *Monell*-related discovery"); *Smith v. Portwood*, No. 19 C 5329, 2021 WL 4318076, at *2 (N.D. Ill. Sept. 23, 2021) ("In general, parties are permitted discovery to investigate and develop their claims so long as the request is reasonably tailored to produce information that bears on their allegations.").

Other than relevance and burden, Wexford and the IDOC do not address the remainder of the proportionality factors set out in Federal Rule of Civil Procedure 26(b)(1). Rule 26(b)(1) requires the parties and the court to consider the following factors when defining the scope of discovery: the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1). Given that this Court is required to consider the proportionality factors, it will do so here so as to appropriately assess the need for the discovery Plaintiff seeks.

The issue of alleged inadequate medical treatment resulting from policies preventing or delaying necessary offsite treatment for "excruciating back pain" is important and, if proven, may result in a significant award. Pl.'s Compl., Dkt. 121. Although Plaintiff has counsel, documents supporting his *Monell* claim are largely in the hands of Wexford and the IDOC. Additionally, such documents are essential to Plaintiff's claim because without documents relating to other inmates' medical care and their experiences with the alleged unconstitutional polices, Plaintiff is unlikely to prove his *Monell* claim. *See Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020) ("While it is not impossible for a plaintiff to demonstrate a widespread practice or custom with evidence limited to personal experience, it is necessarily more difficult . . . because what is needed is evidence that there is a true municipal policy at issue, not a random event.") (internal quotation marks and citation omitted). Lastly, and as discussed more below, the Court finds the benefit of the requested discovery, as limited by this Court, outweighs its burden.

With these proportionality factors in mind, the Court will now turn to Plaintiff's request for documents underlying the *Lippert* reports.

---

[4] Although the district judge was opining on Plaintiff's *Monell* claim in his third amended complaint, the claim in essentially the same as the one alleged in his fourth amended complaint. *Compare* Dkt. 60 *with* Dkt. 121.

**Request 30**[5]

> All Documents underlying the 2014 Lippert Report and 2018 Lippert Report, including but not limited to, Documents Defendants and third-parties provided to authors of the 2014 Lippert Report and 2018 Lippert Report while the reports were being drafted and Documents referenced in or otherwise relied upon by the authors of the 2014 Lippert Report and 2018 Lippert Report in reaching the opinions expressed in the reports. This Request is limited to Dixon, and the time period of January 1, 2012 through October 31, 2018.

This Court has previously addressed a nearly identical document request in *Lymon v. Chamberlain*, No. 17 CV 50093, 2020 WL 6940985 (N.D. Ill. Nov. 24, 2020). In *Lymon*, the plaintiff alleged claims of deliberate indifference for the defendants' failure to promptly remove a large growing mass in his abdomen for approximately one year following its discovery while he was incarcerated at Dixon between 2016 and 2017. The mass was eventually removed and was determined to be cancerous. With respect to his *Monell* claim against Wexford, the plaintiff alleged that its policies and practices caused substantial delays for offsite medical treatment and specialty care.

"[T]he more common paths toward *Monell* liability require proof either of an express policy that is unconstitutional or a widespread practice or custom affecting other individuals or showing repeated deliberate indifference toward the plaintiff." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 655 (7th Cir. 2021). The Seventh Circuit has held that Wexford's collegial review process is "not unconstitutional on its face." *Id.* at 659. However, "the collegial review process *could* be a mechanism for denying or delaying medical care that inmates need. . . . [if] used in a widespread or systemic way to violate constitutional rights." *Id.* (emphasis in original).

In light of the need to show a widespread practice affecting other inmates, in *Lymon*, this Court found documents underlying the *Lippert* reports from Dixon between January 1, 2013 through December 31, 2018 relevant to Plaintiff's *Monell* claim against Wexford. The *Lippert* reports directly criticized the collegial review process as a cause of improper and delayed offsite specialty treatment, which was the exact policy that the plaintiff alleged caused the delay in removing his cancerous mass. Accordingly, such documents would address whether other inmates suffered similar delays in offsite treatment as a result of Wexford's alleged widespread practice.

Here, Plaintiff relies heavily on *Lymon*, 2020 WL 6940985, to support the relevance and proportionality of the documents underlying the *Lippert* reports. Like *Lymon*, Plaintiff is similarly alleging a *Monell* claim that criticizes the collegial review process and the resulting inadequate offsite specialty care as outlined in the *Lippert* reports. Yet, Plaintiff's claim has a slight, albeit insignificant, difference. Plaintiff's *Monell* claim consists of two prongs: (1) between January 2012 and August 2015, it was Wexford's policy to intentionally not use the collegial review process to refer inmates for offsite medical treatment; and (2) from August 2015 through the present, Wexford's policies and practices caused delays in offsite treatment and related follow-up treatment. Plaintiff distinguishes between these two policies by alleging that in August 2015,

---

[5] The Court will refer to the document requests issued to Wexford as referenced in Plaintiff's motion. *See* Dkt. 144-3. Identical document requests were also issued to the IDOC. *See* Dkt. 144-5.

Wexford's policy changed when Dr. Tim Chamberlain became the medical director at Dixon[6] and Plaintiff was finally recommended to collegial review for an offsite appointment for his back pain. However, despite the referral to collegial review, Plaintiff alleges that the collegial review process caused delays to his offsite treatment on three separate occasions: (1) in July 2018 an offsite neurosurgeon recommended an MRI within 30 days, which he did not receive until three months after collegial review approval; (2) in July 2018 an offsite neurosurgeon recommended an epidural, which had not been scheduled as of September 2018 despite collegial review approval; and (3) at a sick call appointment in September 2018, Plaintiff had been notified that collegial review had approved a biopsy for his skin problems but the procedure was never scheduled. Pl.'s Compl. at 7, Dkt. 121.

Accordingly, Plaintiff is arguing that prior to 2015 Wexford had a policy of not referring inmates to collegial review. Although the findings in the *Lippert* reports relating to offsite specialty treatment focus mainly on failures and delays resulting from the collegial review process itself, the reports also identify a problem with underutilization of specialty care. *See* Dec. 2014 *Lippert* Report (Ex. G) at 9-10, Dkt. 144-7; Oct. 2018 *Lippert* Report at 65-66, Dkt. 767, *Lippert*, No. 1:10-CV-04603. Accordingly, this Court agrees that certain documents underlying the 2014 *Lippert* report are relevant to the first prong of Plaintiff's *Monell* claim addressing a policy or practice of not referring inmates between 2012 and 2015. Additionally, for the same reasons stated in *Lymon*, this Court finds that certain documents underlying the 2018 *Lippert* report are relevant to the second prong of Plaintiff's *Monell* claim that after 2015 the collegial review process resulted in improper or delayed offsite specialty treatment.

Despite the similarities between this case and the Court's prior decision in *Lymon*, Wexford and the IDOC do not address the decision or why this Court's analysis does not control in this case. Wexford does not mention *Lymon* in its brief and the IDOC devotes only one cursory sentence to argue that an undue burden in this case "goes heavily against proportionality that might not have been demonstrated to the court in the case of *Lymon*." Def.'s Resp. at 7, Dkt. 151. Yet, the IDOC makes no attempt to distinguish this Court's findings in *Lymon*. "The ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is as unprofessional as it is pointless." *Gonzalez-Servin v. Ford Motor Co.*, 662 F.3d 931, 934 (7th Cir. 2011) (internal quotation marks and citation omitted).

Instead, Wexford and the IDOC raise numerous objections to Plaintiff's request, with two of the main arguments being relevance and undue burden as they relate to the proportionality of the discovery. As to relevance, they argue that Plaintiff's request for *all* documents underlying the *Lippert* reports for a seven-year timeframe is overbroad because Plaintiff has only alleged specific instances of inadequate medical treatment for his skin and back issues occurring in 2015 and 2018.

Regardless, Plaintiff's *Monell* claim alleges an unconstitutional policy or practice from 2012 to the present. Accordingly, Plaintiff must show a sufficiently widespread practice affecting other inmates during this timeframe, which necessarily goes beyond the specific inadequate medical treatment he received. *See Daniel v. Cook Cty.*, 833 F.3d 728, 734 (7th Cir. 2016) ("To prove an official policy, custom, or practice within the meaning of *Monell*, [a plaintiff] must show

---

[6] In Wexford's response to interrogatories, it states that Dr. Chamberlain was medical director from August 2015 through June 2017. Dkt. 144-3 at 15.

more than the deficiencies specific to his own experience[.]"); *Hildreth*, 960 F.3d at 432 (Hamilton, J. dissenting) (recognizing that for a plaintiff to offer evidence of a sufficiently widespread problem with a Wexford practice, "demands for broad discovery into other inmates' experiences with Wexford and its [practice] should be undeniable"). Moreover, "[c]ourts addressing *Monell* claims routinely recognize that they do not exist in a vacuum, and that discovery that both pre-dates and post-dates the conduct of which an individual plaintiff complains is relevant insofar as it may provide evidence of the same policies or practices that the plaintiff alleges." *Outley v. City of Chicago*, No. 17 C 08633, 2021 WL 4789026, at *5 (N.D. Ill. Jan. 5, 2021); *see also Wilson v. Cook Cty.*, 742 F.3d 775, 780 (7th Cir. 2014) ("Although this court has not adopted any bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident – or even three incidents – do not suffice."). Although "*Monell* discovery is inherently time-consuming and voluminous . . . the Court should also not excessively limit discovery such that it affects Plaintiff's ability to prove his claim at trial." *Prince*, 2020 WL 1874099, at *2.

However, this Court agrees that Plaintiff's request for *all* documents underlying the *Lippert* reports is not reasonably tailored to his *Monell* claim. Plaintiff is alleging that Wexford's policy or practice denied and delayed offsite specialty treatment for his back and skin issues. Yet, the *Lippert* reports discuss deficiencies in many unrelated areas of Dixon's medical care. For example, documents relating to emergency care, on site dental care, and infection control would not be relevant and necessary to Plaintiff's claim.

Since this Court issued its decision in *Lymon*, the Seventh Circuit has provided additional guidance on what is necessary to prove a practice or custom under *Monell*. "[A] practice or custom theory will be more persuasive if a plaintiff can show that the defendant government or company treated other, similarly situated patients in similar unconstitutional ways." *Howell*, 987 F.3d at 655. Here, Plaintiff has not shown how *all documents* underlying the report would reveal "similarly situated patients,"[7] even when limited to Dixon. As such, this Court finds that only documents relating to offsite specialty treatment at Dixon, namely scheduled offsite services and specialty consultations,[8] in the *Lippert* reports are relevant. *See BankDirect Cap. Fin., LLC, v. Cap. Premium Fin., Inc.*, No. 15 C 10340, 2018 WL 946396, at *4 (N.D. Ill. Feb. 20, 2018) ("While the federal discovery rules have an expansive reach, they are not without limits, and relevancy is perhaps the most important of those constraints.") (internal citations omitted).

The IDOC additionally argues that documents underlying the *Lippert* reports are not relevant to Plaintiff's deliberate indifference claims against the individual IDOC Defendants and are "only sought to harass the IDOC Defendants." Def.'s Resp. at 9, Dkt. 151. However, discovery need only be relevant to "any party's claim or defense." Fed. R. Civ. P. 26(b)(1). There is no additional requirement that the discovery must be relevant to the claims against only a particular party. Moreover, because *Monell* claims often require "a broad and substantial amount of

---

[7] The Seventh Circuit uses this term from the employment discrimination context to determine whether the similarities between the plaintiff and other inmates show a widespread practice that supports a finding of an unconstitutional custom or practice. *See Howell*, 987 F.3d at 656-57.

[8] Specifically, this refers to documents underlying the sections of the 2014 *Lippert* report titled "Scheduled Offsite Services" and the 2018 *Lippert* report titled "Specialty Consultations." Ex. G, Dkt. 144-7; Ex. H, Dkt. 144-8.

discovery that would not be involved if the plaintiff sued only the individuals directly involved in the deprivation of his rights," *see Awalt v. Marketti*, 11 C 6142, 2012 WL 6568242, at *3 (N.D. Ill. Dec. 17, 2012), this Court does not find that requesting broad discovery in itself supports a claim of harassment against the IDOC Defendants.

As to undue burden, Wexford and the IDOC's arguments are virtually identical to the burden arguments made and rejected by this Court in *Lymon*. The IDOC has submitted a declaration in support of its claim of undue burden, which is remarkably similar to the one submitted and rejected as insufficient in *Lymon*. Legal counsel for the IDOC maintains that the documents underlying the 2014 *Lippert* report were not kept in a central location and the individual that produced those documents in *Lippert* is no longer with the IDOC. Yet, the IDOC makes no attempt to identify the burden of locating a copy of such documents or otherwise compiling them.[9] *See Jenkins v. White Castle Mgmt. Co.*, No. 12 C 7273, 2014 WL 3809763 at *2 (N.D. Ill. Aug. 4, 2014) ("Undue burden or expense, actual or potential, must be shown by a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.") (internal quotation marks and citation omitted). *Monell* discovery is inherently burdensome in any case, but it is for the IDOC to specify how that burden is undue here. *See Velez v. City of Chicago*, No. 18 C 8144, 2021 WL 1978364, at *4 (N.D. Ill. May 18, 2021) ("The importance of the discovery is significant, given the burden of establish[ing] a *Monell* claim. Is there a significant burden? Yes, but not an undue burden as the City would suggest – if not openly claims. But, as courts have made clear, the burden is part and parcel of *Monell* litigation.").

The IDOC declaration also states that it would be unduly burdensome to collect approximately 15,000 to 20,000 pages of documents in addition to medical records underlying the 2018 *Lippert* report. *See* Ex. A, Dkt. 151-1. Yet, just as it did in *Lymon*, the IDOC does not indicate how many of those 15,000 to 20,000 documents relate only to Dixon. The IDOC's declaration states only that there is "no system that would identify" documents sent from Dixon. *Id.* But the fact that no system would identify these documents does not give this Court any information on the relative burden or expense on the IDOC to produce the Dixon documents. *See Jenkins*, 2014 WL 3809763, at *2. The IDOC further states that all documents underlying the 2018 *Lippert* report were uploaded to a disk, but no copy of that disk was made. However, in *Lippert* the IDOC was represented by the Illinois Attorney General's Office. Yet, at oral argument the IDOC admitted that no one asked counsel in the Illinois Attorney General's Office whether a copy of the disk could be located. This is insufficient to support a showing of undue burden. *See, e.g., Jenkins*, 2014 WL 3809763, at *2 ("What is required is affirmative proof in the form of affidavits or record evidence.").

Wexford submitted a declaration from its Director of Risk Management, HIPAA Compliance, and Legal Affairs stating that it would be unduly burdensome to collect documents underlying the *Lippert* reports because there is no single source of that information and it would need to engage its counsel in *Lippert* to review nearly 11 years' worth of correspondence and requests to compile the documents. *See* Ex. D, Dkt. 150-4. First, Plaintiff is not seeking eleven years' worth of documents. His request seeks only documents from 2012 to 2018. Second, this Court has limited the request to only those documents relating to scheduled offsite treatment and

---

[9] For example, the IDOC does not indicate that they attempted to locate a copy of the documents from counsel in the Illinois Attorney General's Office.

the collegial review process at Dixon. Finally, Wexford states only that counsel would "likely" need weeks if not months to compile these documents. The Court finds this statement insufficient to support undue burden where counsel knowledgeable about the *Lippert* documents, i.e. *Lippert* counsel, did not provide a declaration outlining any undue burden.

Just as it did in *Lymon*, this Court acknowledges Wexford and the IDOC's concerns of not knowing which documents the experts in *Lippert* relied upon. However, this argument addresses only one part of the discovery request. Plaintiff is requesting documents that were both provided to the authors of the *Lippert* reports *and* those that were referenced in or otherwise relied upon. Even as to the documents referenced or relied upon, many documents are specifically identified or referenced in the reports. For example, the IDOC has agreed to look for the scheduling logs referenced on page 59 of the 2018 report and the quality improvement study referenced on page 60 of that report. With regard to the 2014 report, there is a specific list of medical records relied upon to form conclusions about the collegial review process at Dixon. *See* Feb. 2014 Dixon *Lippert* Report, App'x A at 172, Dkt. 339, *Lippert*, No. 1:10-CV-04603. Wexford and the IDOC are only required to produce documents referenced or relied upon by the experts to the extent they know of such documents. Accordingly, this Court finds that Plaintiff's request, as limited above, is both relevant and proportional to the needs of this case.

Lastly, Wexford and the IDOC also make several other arguments that this Court must address. Both Wexford and the IDOC object based on a misguided argument relating to the admissibility of the reports. Part of Wexford's argument is that if Plaintiff intends to use the reports to show that Wexford had notice of issues with their collegial review process this Court should stay this case pending an appeal before the Seventh Circuit where admissibility of the *Lippert* reports will be decided. *See Dean v. Wexford Health Sources, Inc.*, Case No. 20-3058 (7th Cir.). Just as the Court told the parties in *Lymon*, it is not ruling on whether the *Lippert* reports themselves are admissible where Plaintiff is only requesting documents underlying those reports. *See Lymon*, 2020 WL 6940985, at *6 ("Not only is Plaintiff seeking the documents underlying the reports, not the reports themselves, but Plaintiff has not yet sought to introduce these documents or opinions based on these documents at summary judgment or trial.").

Wexford also argues that producing the documents underlying the *Lippert* reports would "encroach on the authority of the *Lippert* court and raise a concern about duplicitous litigation." Def.'s Resp. at 4, Dkt. 150. This Court does not find these objections supported. It is not clear to the Court how producing these documents would "litigate *Lippert* all over again." *Id.* Plaintiff seeks to use these documents to support his *Monell* claim as alleged in this case. He can do this by either identifying other similarly situated plaintiffs who were subjected to the same policies he alleges in his complaint or by providing the documents produced by Wexford and the IDOC to his own experts to opine on the policies or practices that they disclose. *See Lymon*, 2020 WL 6940985, at *5 (ordering the production of documents underlying the *Lippert* reports and acknowledging that the plaintiff intended to have his own expert opine on them); *Prince*, 2020 WL 1874099, at *4. Thus, any findings relating to the underlying documents would relate only to the allegations in Plaintiff's complaint. Furthermore, Wexford's concern over duplicitous litigation rests on the assumption that ordering the documents underlying the *Lippert* reports in this case would allow any inmate to receive discovery from unrelated lawsuits. That is clearly untrue. Relevance and

proportionality must still be established at the outset before a court will even entertain any production of documents.

Wexford also argues that Plaintiff is requesting protected health information ("PHI") for non-party inmates that are subject to the Health Insurance Portability and Accountability Act ("HIPAA") and notes that there is no order in this case that allows for the disclosure of non-party PHI. Accordingly, Wexford argues only that "[u]ntil Plaintiff addresses how to handle PHI, his motion is premature." Def.'s Resp. at 7, Dkt. 150.

Wexford is correct that the HIPAA qualified protective order previously entered in this case between Plaintiff and Wexford covers only the PHI pertaining to Plaintiff, not other non-parties. *See* Dkt. 24. Accordingly, the parties shall submit a qualified protective order governing the distribution and use of PHI of non-parties produced in this case. The protective order shall prohibit the use or disclosure of PHI for any purpose other than in this litigation and require that the PHI be returned to the covered entity or destroyed at the end of the litigation. *See Haywood v. Wexford Health Sources, Inc.*, No. 16 CV 3566, 2021 WL 2254968, at *5 (N.D. Ill. June 3, 2021) (finding that a protective order entered pursuant to 45 C.F.R. § 164.512(e)(1)(v) permitted Wexford to disclose non-party inmates' PHI without violating HIPAA). Further, this Court finds that to protect the privacy of other inmates' PHI, Wexford and the IDOC should redact the non-party inmates' personal identifiers from the documents produced, as agreed to by Plaintiff. *See Doe v. MacLeod*, No. 3:18-CV-3191, 2019 WL 2601338, at *3 (C.D. Ill. June 25, 2019) (finding error by not ordering IDOC to redact the personal identifiers of the non-party inmates when producing documents). To the extent the remaining requests require Wexford and the IDOC to disclose non-party PHI, any objections under HIPAA are similarly overruled to the extent that they do not prevent disclosure of documents.

For the reasons stated above, Plaintiff's motion to compel is granted in part and denied in part with respect to Request 30. To the extent that any of the remaining requests seek documents already produced in response to Request 30, Wexford and the IDOC are not required to produce those documents again in response to the remaining requests. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (requiring limitation of discovery that is "unreasonably cumulative or duplicative"). The Court also notes, as it did in *Lymon*, that it would only benefit Wexford and the IDOC to coordinate their efforts in producing documents to avoid as much overlap as possible and any unnecessary burden.

**Requests 13, 14 and 26**

13. All Documents constituting or relating to any investigation, audit, monitoring, or review (by any governmental or private person) of the medical care and treatment provided to Dixon inmates both at Dixon and at outside medical facilities.

14. All Documents relating to the adequacy, legality, or quality of medical care or treatment at Dixon, and/or compliance with any court order or other governmental directive or order regarding the same.

26. All Documents relating to any audit, inspection, study, report, investigation, evaluation or survey (including surveys by accrediting and regulatory bodies) that

in any way relates to or addresses the adequacy or sufficiency of medical care; availability of medical treatment; or training, monitoring, or supervision in connection providing medical care to IDOC inmates during the period of Mr. Arsberry's incarceration in the IDOC.

The parties do not individually address the above requests in their briefs. The IDOC generally argues that requesting documents underlying the *Lippert* reports is unduly burdensome and not proportional to the needs of the case. Although not identified in Wexford's brief, it objected to Plaintiff's discovery requests as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. Plaintiff makes only a general argument that the above requests are relevant to his *Monell* claim. Plaintiff makes no attempt to address the exceedingly broad scope of Requests 13 and 14 where no time limitation is identified. *See Sanchez v. Hargan*, 334 F.R.D. 180, 181 (N.D. Ill. 2020) ("Such temporally unlimited requests necessarily (or at least potentially) exceed the bounds not only of relevance, but of proportionality under Fed. R. Civ. P. 26(b)(1).").

Request 26 is similarly overbroad where it seeks documents "during the period of Mr. Arsberry's incarceration in the IDOC." Plaintiff is not alleging that all his medical care spanning approximately 40 years while he was incarcerated was inadequate. Plaintiff's complaint is limited to his medical care at Dixon and his claims only date back to 2012. It is Plaintiff's burden to show the relevance of his discovery requests and he has not met that burden here. *See BankDirect Cap. Fin., LLC*, 2018 WL 946396, at *4 ("Unless the requestor can demonstrate that the materials sought are relevant, judges should not hesitate to exercise appropriate control over the discovery process."). Plaintiff provides no explanation as to how all documents relating to any investigation of medical care at Dixon with no time limit or how medical care at other facilities are relevant to his *Monell* claim. Accordingly, this Court agrees with Wexford and the IDOC that the above requests are overbroad on their face. Such a request must be both temporally limited and specific to alleged deficiencies in offsite services and the collegial review process. However, it is not for this Court to rewrite Plaintiff's discovery requests. *See Ye*, 2016 WL 950948, at *4; *Annex Books, Inc.*, 2011 WL 13305341, at *3. Plaintiff's motion to compel is denied with respect to Requests 13, 14, and 26.

Although the Court finds that the requests are overly broad and are therefore denied, this Court will also address Wexford's objection under the Illinois Medical Studies Act ("IMSA"), 735 ILCS 5/8-2101 *et seq*, because Wexford asserts this privilege in response to the instant requests along with Request Nos. 12, 19, 23-24, and 32. *See* Def.'s Resp. at 7, Dkt. 150. The Court notes, as an initial matter, that the privilege arising under the IMSA is not binding on this Court where Plaintiff's principal claims arise under 42 U.S.C. § 1983. *See Meml. Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981) (holding that, where the principal claim in the case arises under a federal law and state law does not supply the rule of decision, the district court is not required to apply state law in determining whether discovery is privileged under IMSA); *Warren v. Sheriff of Cook County Thomas Dart*, 09 CV 3512, 2013 WL 5835771, at *2 (N.D. Ill. Oct. 30, 2013) (concluding that the court was not obligated to apply Illinois law to determine whether the discovery was privileged because the principal count in the plaintiff's complaint arose under 42 U.S.C. § 1983). However, "just because a privilege recognized by state law is not binding on this court does not mean that this court must ignore it or that it is not relevant." *Warren*, 2013 WL 5835771, at *2. Rather, courts should "consider the law of the state in which the case arises

11

in determining whether a privilege should be recognized as a matter of federal law." *Shadur*, 664 F.2d at 1061.

However, the burden of proving that the IMSA privilege applies is on the party invoking it. *See Ardisana v. Nw. Cmty. Hosp., Inc.*, 795 N.E.2d 964, 969 (Ill. App. Ct. 2003). This burden may be met by submitting the allegedly privileged materials for *in camera* review or by submitting affidavits setting forth facts sufficient to establish the applicability of the privilege to the documents being withheld. *Ekstrom v. Temple*, 553 N.E.2d 424, 428 (Ill. App. Ct. 1990); *see Crook v. Dart*, 408 F. Supp. 3d 928, 931 (N.D. Ill. 2019) (finding that defendants submitted no factual record to support their assertion of the privilege); *Warren*, 2013 WL 5835771, at *3 (party asserting the privilege submitted an affidavit for the purpose of establishing applicability of the privilege).

Here, Wexford has the burden of proving that the IMSA privilege applies but failed to meet that burden. Wexford dedicates one paragraph in its response brief to this objection and despite citing a case requiring a party to submit an affidavit on the issue or the allegedly privileged materials for *in camera* review has done neither. *See* Def.'s Resp. at 7, Dkt. 150 (citing *Crook*, 408 F. Supp. 3d at 931). Because the Court has not been provided with sufficient information to determine whether the privilege applies in the first instance, Wexford's objection to Request Nos. 12-14, 19, 23-24, 26, and 32 on the basis of this privilege is overruled.

## Request 19

> All Documents relating to tracking or otherwise documenting delays in the provision of offsite medical care or consultation at Dixon. This request includes, but is not limited to, the Documents, study, records or data relied upon and referred to on page 60 of the Dixon report in the 2018 Lippert Report.

Plaintiff argues that the request is relevant to his *Monell* claim and the delays for offsite medical care while at Dixon. However, the request is overbroad on its face because it has no time limitation. *See Sanchez*, 334 F.R.D. at 181. The only part of the request that is tailored to Plaintiff's *Monell* claim is the second sentence of the request. Page 60 of the 2018 *Lippert* report relating to Dixon references an April 2017 quality improvement study showing delays in offsite services. Ex. H at 28, Dkt. 144-8. According to the parties' joint status report, the IDOC has agreed to look for the scheduling logs referenced on page 59 of the report and the quality improvement study referenced on page 60. *See* Dkt. 155. As such, the IDOC shall produce these documents to Plaintiff if they have located them. In the event IDOC is unable to locate these documents, Wexford is additionally ordered to coordinate with the IDOC to attempt to locate the documents. Accordingly, Plaintiff's motion to compel is granted in part and denied in part with respect to Request 19.

## Requests 31 and 32

> All Documents relating to any notes taken during meetings with the authors of the 2014 Lippert Report during their visit to Dixon on February 26-28, 2014, and authors of the 2018 Lippert Report during their visit to Dixon on April 2-5, 2018.

> All Documents relating to any monthly or annual meetings between Wexford and IDOC where the 2014 Lippert Report and/or 2018 Lippert Report were discussed including, but not limited to, minutes of the meetings, handwritten notes taken at the meetings, memos relating to the meetings, emails relating to the meetings, agendas relating to the meetings, and any video or audio of the meetings.

The Court finds that notes and meeting minutes are relevant to Plaintiff's *Monell* claim for the same reason documents underlying the Lippert *reports* are relevant, but only to the extent that the documents also relate to the collegial review process. Wexford and the IDOC argue that many of the documents may contain irrelevant or privileged information. "However, discovery is not improper simply because a party's request is likely to unearth some documents that eventually prove to be irrelevant to that party's claim[.]" *Awalt*, 2012 WL 6568242, at *5. Additionally, Wexford's objection based on the IMSA is overruled for the reasons stated above. Wexford has neither submitted the documents that are subject to privilege for an *in camera* review nor submitted an affidavit on the issue for this Court to assess the claim. *See* Fed. R. Civ. P. 26(b)(5)(A); *Crook*, 408 F. Supp. 3d at 931. Accordingly, Wexford and the IDOC shall produce documents in response to Requests 31 and 32 where the documents are related to discussions of the *Lippert* reports and the collegial review process. Plaintiff's motion to compel is granted in part and denied in part with respect to Requests 31 and 32.

## Request 33

> All Documents relating to any changes made at Dixon, to the collegial review process, and/or management of Dixon, in response to the 2014 Lippert Report and/or 2018 Lippert Report.

Plaintiff does not specifically address the relevance of the requested documents to his *Monell* claim. Wexford and the IDOC argue generally that the request is overbroad and unduly burdensome. Wexford additionally argues that the documents are inadmissible and changes made in response to the 2014 *Lippert* report are contained in the 2018 report.

The Court agrees with Wexford that Plaintiff has not shown the relevance of changes made after 2018 where he does not allege any deficient medical treatment beyond 2018 and was paroled in 2020. Additionally, Plaintiff has not shown how documents relating to changes in Dixon's management are relevant to an alleged policy of not referring inmates to collegial review and, when referred to collegial review, providing inadequate and delayed offsite specialty treatment. Although Plaintiff makes a distinction between Wexford's policies before and after August 2015 when Dr. Chamberlain became medical director, "management of Dixon" is overbroad and goes beyond changes related to Wexford's policies for offsite specialty treatment. For example, changes in management would encompass changes relating to the management of Dixon's onsite dental program. Accordingly, Plaintiff has only shown that documents relating to changes made to the collegial review process at Dixon in response to the 2014 *Lippert* report are relevant to his claim.

Wexford and the IDOC's undue burden objections are insufficient because their declarations do not identify a burden in producing the documents underlying this request, as opposed to the documents underlying the *Lippert* reports generally. Wexford's inadmissibility

argument is without merit where information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Lastly, Wexford's argument that the changes are contained in the 2018 *Lippert* report is without merit where it also argues that the report is not admissible. Accordingly, Wexford and the IDOC shall produce documents relating to any changes made at Dixon to the collegial review process in response to the 2014 *Lippert* report. Plaintiff's motion to compel is granted in part and denied in part with respect to Request 33.

**Interrogatories 2 and 3**

Plaintiff also served two interrogatories on Wexford asking it to identify all persons (other than prisoners) that the medical investigation team interviewed, met with, or consulted with relating to Dixon in connection with the 2014 and 2018 *Lippert* reports, including during the visits on February 26-28, 2014 and April 2-5, 2018. Plaintiff argues that the request is relevant to his *Monell* claim. This Court agrees that individuals that were interviewed in connection with the *Lippert* reports would be relevant, but the interrogatories must be further limited to only individuals involved in the collegial review process at Dixon.

Wexford objects arguing that it does not have a list of names, the list likely includes IDOC personnel, and Plaintiff can obtain this information at depositions. Although Wexford argues that it does not have a list of names, its declaration states only that "Wexford did not keep track of *all* the individuals." Ex. D, Dkt. 150-4 (emphasis added). Wexford has not argued that it would suffer any undue burden in compiling this list of names. Accordingly, Wexford shall produce the names of individuals they did keep track of. Additionally, to the extent Wexford cannot identify relevant IDOC personnel, it is not required to provide information that it does not have. Lastly, Wexford has not shown how asking deponents if they met with the medical investigation team would readily identify all responsive individuals. If the individuals Plaintiff deposes have no knowledge of those interviewed, Plaintiff is unlikely to obtain a full list of said individuals. Plaintiff's motion to compel is granted in part and denied in part with respect to Interrogatories 2 and 3.

**B. Requests for Other Documents[10]**

Plaintiff also requested the following documents from Wexford:

**Request 12.**

All Communications, Documents, and ESI related to any cost control methods or measures that Wexford and/or IDOC has implemented in IDOC correctional facilities regarding inmate medical treatment, including, but not limited to, the treatment and diagnosis of each of the Medical Issues identified in the Complaint.

When given the opportunity to limit his request, Plaintiff limited it to only Dixon and the timeframe to January 1, 2012 through January 1, 2018. Pl.'s Rep. at 10, Dkt. 152. Plaintiff points out that this request is relevant to his deliberate indifference and *Monell* claims because it may be

---

[10] According to the joint status report, Dkt. 155, Plaintiff and the IDOC have reached an agreement on the requests listed below following the filing of the motion to compel.

used to show that Wexford's cost-cutting policies during the time of his complaint caused his inadequate medical care. Pl.'s Mot. at 12, Dkt. 144.

Wexford makes several objections to Plaintiff's request, including that it is overbroad and not proportional to the needs of the case. Def.'s Resp. at 10, Dkt. 150. Wexford specifically points out that the request refers to "each of the Medical Issues identified in the Complaint," which does not narrow the request. *Id*. Although Plaintiff suffered from numerous medical issues while incarcerated, his complaint only identifies specific instances of medical treatment relating to his back, abdominal, and skin issues. However, these are just examples of the types of documents requested because the request is not limited to just those medical issues referenced in the complaint. Instead, the request seeks documents "regarding inmate medical treatment." Such a broad request is highly likely to encompass irrelevant materials. For instance, the way the request is currently written, Wexford could be forced to turn over information concerning its decisions regarding medical equipment purchases or its staffing procedures. Because this request is overly broad on its face, the Court declines to rewrite Plaintiff's discovery request. *See Ye*, 2016 WL 950948, at *4; *Annex Books, Inc.*, 2011 WL 13305341, at *3. Plaintiff's motion to compel is denied with respect to Request 12.

**Request 20.**

Plaintiff requests "[a]ll offsite tracking logs for Dixon." Plaintiff limited this request to the timeframe of January 1, 2012 through January 1, 2018. Pl.'s Mot at 12, Dkt. 144. Plaintiff claims that these documents are relevant to his deliberate indifference and *Monell* claims and points out the connection between tracking for offsite services and the offsite referral system at Dixon. *Id*; Pl.'s Rep. at 11, Dkt. 152.

Wexford argues that this request is overly broad and that the request is not proportional because Plaintiff's allegations about offsite medical treatment do not begin until mid-2018. Def.'s Resp. at 10, Dkt. 150. The Court finds that this request is not overbroad. Offsite tracking logs for Dixon directly relate to the allegations that Wexford had policies or practices of: (1) refusing to submit other inmates to collegial review between the years of 2012 and 2015; and (2) of delaying inmates' access to offsite specialty treatment following collegial review approval between the years of 2015 and 2018. For example, the logs could reveal that after 2015, there was a substantial increase in the number of referrals for offsite specialty care. This may help establish the first prong of Plaintiff's *Monell* claim. *See Howell*, 987 F.3d at 655-56 ("[A] practice or custom theory will be more persuasive if a plaintiff can show that the defendant government or company treated other, similarly situated patients in similar unconstitutional ways."). As such, the Court finds that the request is not overbroad with respect to content or time.

Wexford also asserts that the request is unduly burdensome because the logs are maintained on a near daily basis and compiling 7 years' worth of logs would take weeks. Def.'s Resp. at 10, Dkt. 150; Ex. D at 2, Dkt. 150-4. The Court finds that Wexford has not shown that the burden of producing the offsite tracking logs is so significant that the request should be denied, especially given that the logs directly relate to Plaintiff's *Monell* claim. As an initial point, the single sentence about logs in the declaration Wexford provided does not sufficiently explain why it would take weeks to compile them. The request is not asking Wexford to create new documents or produce

15

something it does not already have, so it is unclear why Wexford anticipates the alleged amount of time to provide tracking logs. Further, it is well known that *Monell* claims inherently require a broader amount of discovery. *See Awalt*, 2012 WL 6568242, at *3 ("[C]ases involving *Monell* claims . . . often require a broad and substantial amount of discovery that would not be involved if the plaintiff sued only the individuals directly involved in the deprivation of his rights.") (citing cases). Yet, again, Wexford has not demonstrated why responding to this request would be *unduly* burdensome.

Wexford also objects to the request because it seeks PHI of non-parties subject to HIPAA. Ex. C at 5, Dkt. 144-3. However, this does not warrant denying the request; to the extent that the tracking logs are protected by HIPAA, Wexford shall redact the PHI of non-parties before turning them over to Plaintiff. As such, Plaintiff's motion to compel is granted with respect to Request 20.

**Request 21.**

Plaintiff requests "[a]ll scheduling logs for Dixon." Plaintiff limited this request to the timeframe of January 1, 2012 to January 1, 2018. Pl.'s Mot at 12, Dkt. 144. Plaintiff claims that these documents are relevant to his deliberate indifference and *Monell* claims. *Id.* Wexford makes a handful of objections to this request, including that it is overly broad. Def.'s Resp. at 10, Dkt. 150.

The Court finds that Plaintiff has failed to show how his request is specifically relevant to his claims given the breadth of what could be encompassed by the term "scheduling logs." Additionally, Wexford is correct that this request is overbroad. Although there is a reference to "the scheduling log" in the section about specialty consultations in the 2018 *Lippert* report, the Court will not rely on its own speculative interpretation of Plaintiff's discovery request. In looking at the entire 2018 *Lippert* report, there are numerous logs referenced that could reasonably be encompassed in Plaintiff's request, including nurse sick call logs, chronic care clinic logs, or dental logs, which would be irrelevant to Plaintiff's claims. Due to Plaintiff's failure to demonstrate the request's relevancy and the apparent overbroad nature of his request, the Court declines to rewrite Plaintiff's discovery request. *See Ye*, 2016 WL 950948, at *4; *Annex Books, Inc.*, 2011 WL 13305341, at *3. Plaintiff's motion to compel is denied with respect to Request 21.

**Request 22.**

Plaintiff requests "[a]ll Documents identifying, by year and month, the number of inpatient hospitalization admissions and outpatient visits to University of Illinois at Chicago from Dixon." Plaintiff agreed to limit the timeframe of this request to January 2012 to December 2018. Pl.'s Mot. at 13, Dkt. 144. Wexford does not specifically address this request in its response brief. However, in Wexford's responses to Plaintiff's requests, Wexford objected to this request on the bases that it is overly broad, unduly burdensome, not limited in scope, not proportional to the needs of the case, not reasonably calculated to lead to the discovery of admissible evidence, and seeks PHI of non-parties subject to HIPAA. Ex. C at 6, Dkt. 144-3.

The Court finds that this request is limited in scope, proportional to the needs of the case, and not overbroad. It plainly relates to both prongs of Plaintiff's *Monell* claim and is narrowly

16

tailored to encompass the relevant type of care, population, and timeframe. Moreover, this is only a document request. Plaintiff is not asking Wexford to review all inmate medical records to compile these statistics. To the extent Wexford has documents that identify the number of admissions and visits by year and month, Wexford must produce them to Plaintiff.

With respect to Wexford's arguments that this request is unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, Wexford has not supported its claim of undue burden in its declaration. *See Jenkins*, 2014 WL 3809763 at *2. Additionally, discovery need not be admissible in evidence to be discoverable. *See* Fed. R. Civ. P. 26(b)(1). Finally, regarding the objection that this request violates HIPAA, Wexford does not explain how. The Court notes that the request specifies that it is seeking the *number* of admissions and visits per month, not individually identifiable health information. *See* 45 C.F.R. § 160.103. Nevertheless, to the extent that these documents are protected by HIPAA, Wexford shall redact the PHI of non-parties before turning them over to Plaintiff. Plaintiff's motion to compel is granted with respect to Request 22.

**Request 23.**

> All Documents relating to the time period it takes to process referral requests at Dixon, including the time elapsed (a) between the submission of the referral request to Wexford and the completion of collegial review; (b) between collegial review and utilization management approval; (c) between utilization management approval and offsite or specialist care; (d) between offsite or specialists care and onsite primary care follow up following such offsite or specialists care.

Plaintiff has agreed to limit the timeframe of this request to January 2012 through December 2018. Pl.'s Mot. at 13, Dkt. 144. Plaintiff explains that these documents relate to the broken offsite referral system and process at Dixon. Pl.'s Rep. at 11, Dkt. 152.

In Wexford's responses to the requests, it objected on several bases, including that this request seeks information protected under HIPAA. Ex. C at 6, Dkt. 144-3. But Wexford does not explain how this would violate HIPAA. On its face, the request does not appear to request individually identifiable health information. *See* 45 C.F.R. § 160.103. However, to the extent that any of these documents are protected by HIPAA, Wexford shall redact the PHI of non-parties before turning them over to Plaintiff.

Wexford objects that this request seeks information that is privileged under the IMSA. Def.'s Resp. at 7, Dkt. 150. Yet, as explained in more detail above, Wexford failed to meet the burden of showing that the privilege applies. As such, the Court need not address this objection.

Wexford also objects to the request because it is overly broad and not proportional to the needs of the case. Def.'s Resp. at 10-11, Dkt. 150. Wexford explains that limiting the request to 2012 through 2018 still goes beyond the scope of the case. *Id*. The Court agrees that the timeframe of the request is overly broad, but not to the extent that Wexford argues. Plaintiff's complaint asserts that since Dr. Chamberlain's appointment as medical director in August 2015, Wexford has a policy of providing improperly delayed offsite specialty treatment as a result of the collegial

review process. In other words, allowing Plaintiff to have documents as far back as 2012 goes beyond the scope of his allegation, but 2015 to 2018 would be an appropriately limited timeframe. The Court, therefore, grants Plaintiff's motion to compel with respect to Request 23, limited to the timeframe of August 1, 2015 through December 31, 2018.

**Request 24.**

> All Documents relating to any review, analysis, audits, surveys, reports, or evaluations of Wexford/IDOC's and the University of Illinois at Chicago's contractual obligations and duties to each other, and/or the process and system by which Wexford/IDOC refers patients to the University of Illinois at Chicago for consultations, medical treatment and care, inpatient hospitalization admissions, outpatient visits, and testing.

Wexford objects to the request as overly broad, and this Court agrees. It is evident that the request is highly likely to result in irrelevant materials. For instance, with the clause "contractual obligations and duties to each other," this request could encompass documents containing such irrelevant information as the mechanism by which inmates are transported to UIC. With the clause "consultations, medical treatment and care, inpatient hospitalization admissions, outpatient visits, and testing," this request could encompass information about emergency medical treatment as opposed to scheduled offsite specialty treatment. This part of the request is overbroad on its face, and the Court declines to rewrite it. *See Ye*, 2016 WL 950948, at *4; *Annex Books, Inc.*, 2011 WL 13305341, at *3. Accordingly, Plaintiff's motion to compel is denied with respect to Request 24.

**Request 36.**

> Transcripts of any depositions or trial testimony given by Enloe, Allen, Dr. Dominguez, Dr. Bautista, Dr. Davida, Dr. Chamberlain, Dr. Funk, Dr. Fisher, Dr. Wahl and any other witnesses identified in Defendants' Initial Rule 26(a)(1) Disclosures, relating to Dixon, including any exhibits to any such testimony.

Plaintiff asserts that the testimony is relevant to medical care provided at Dixon during the relevant time period and to Wexford's customs and practices. Pl.'s Rep. at 13, Dkt. 152. Additionally, Plaintiff has agreed to limit the request in the following ways: depositions occurring between January 2015 and present; only those depositions which have already been transcribed; depositions of only those 9 individuals specifically named in the request; and depositions occurring in cases other than the instant case. *Id.*; Pl.'s Mot. at 14, Dkt. 144.

Wexford makes numerous objections to the request supported, in part, by affidavit, including that it is overly broad, not proportional to the needs of the case, and unduly burdensome. Def.'s Resp. at 11, Dkt. 150. Wexford's declaration states only that it does not keep copies of deposition transcripts from lawsuits. Ex. D, Dkt. 150-4. Nevertheless, the Court agrees that this request is overbroad, even with the limitations Plaintiff placed on this request. Perhaps the most significant problem with the request is the fact that it does not limit the types of cases in which depositions would be produced. As written, the request would require production of depositions in cases wholly unrelated to the issues in this case. Due to its grossly overbroad nature, the Court

declines to rewrite Plaintiff's discovery request. *See Ye*, 2016 WL 950948, at *4; *Annex Books, Inc.*, 2011 WL 13305341, at *3. Plaintiff's motion to compel is denied with respect to Request 36.

### C. Fees and Costs

Lastly, both Plaintiff and Wexford request an award of attorneys' fees and costs in bringing and defending against the motion to compel. Under Federal Rule of Civil Procedure 37, if a motion to compel is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). The Court finds that while Plaintiff acted reasonably in filing the motion to compel, many of Wexford's objections were also substantially justified for the reasons addressed above. Accordingly, in its discretion, this Court denies the parties' requests for fees and costs.

### IV. Conclusion

For the reasons stated, Plaintiff's motion to compel discovery responses [144] is granted in part and denied in part. Plaintiff's motion to compel is granted in part as follows:

- Request 30: Wexford and the IDOC shall produce documents underlying the 2014 and 2018 *Lippert* reports limited to offsite specialty treatment at Dixon between January 1, 2012 through October 31, 2018;
- Request 19: Wexford and the IDOC shall produce the scheduling logs referenced on page 59 of the 2018 Dixon *Lippert* report and the quality improvement study referenced on page 60 of the report;
- Requests 31 and 32: Wexford and the IDOC shall produce notes taken during meetings with the authors of the 2014 and 2018 *Lippert* reports during their visits to Dixon in February 2014 and April 2018 and monthly or annual meetings between Wexford and the IDOC where the 2014 and 2018 *Lippert* reports were discussed to the extent that the documents also relate to the collegial review process;
- Request 33: Wexford and the IDOC shall produce documents relating to any changes made at Dixon to the collegial review process in response to the 2014 *Lippert* report;
- Interrogatories 2 and 3: Wexford must respond with the identities of all persons (other than prisoners) that the medical investigation team interviewed, met with, or consulted regarding the collegial review process at Dixon in connection with the 2014 and 2018 *Lippert* reports;
- Request 20: Wexford shall produce all offsite tracking logs for Dixon between January 1, 2012 and January 1, 2018;
- Request 22: Wexford shall produce all documents identifying, by year and month, the number of inpatient hospitalization admissions and outpatient visits to UIC from Dixon; and
- Request 23: Wexford shall produce all documents relating to the time period it takes to process referral requests at Dixon between August 1, 2015 and December 31, 2018.

To the extent applicable, Wexford and the IDOC shall redact any non-party inmates' personal identifiers from the documents produced above. Plaintiff's motion is denied as to Requests 13, 14, 26, 12, 21, 24, and 36.

By November 23, 2021, the parties shall submit a qualified protective order to the Court governing the distribution and use of non-parties' PHI. By December 28, 2021, Wexford and the IDOC are ordered to produce documents to Plaintiff and Wexford is to answer interrogatories in compliance with this Opinion. The fact discovery deadline is extended to January 10, 2022 to complete written discovery and any outstanding depositions.

Date: November 10, 2021                    By:    _Lisa A. Jensen_
                                                  Lisa A. Jensen
                                                  United States Magistrate Judge